cfo/dlg/9703240

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. *OZ - 331 (JAG)* |
| | FILED |
| v. | |
| | AT 8:30 _____ M |
| RENE ABREU, | WILLIAM T. WALSH Title 18, United States Code, |
| LOURDES ADAN-ABREU, | CLERK Sections 215, 371, 1341, 1344, |
| ANA MARTELL, | 1951, 1956 and 2; Title 31, |
| KATHY GIUNTA, | United States Code, Sections |
| VALERIANO SANCHEZ, | 5324(a)(3) and 5324(d)(1) |
| a/k/a "Valerio Sanchez," | |
| FERNANDO JIMENEZ, | |
| EDGARDO AGUIRRE, | |
| a/k/a "Eddie Aguirre," | |
| RONALD ROSNER, | |
| LUIS NIEVES, | |
| JOSE CERVINO and | |
| MANUEL MIER, | |
| a/k/a "Manny Mier" | **I N D I C T M E N T** |

The Grand Jury in and for the District of New Jersey,

sitting at Newark, charges:

## COUNT ONE

### (**Mail Fraud Conspiracy - Residential Loans**)

1. At all times relevant to this Indictment:

a. The Mortgage Pros, Inc. (hereinafter "Mortgage

Pros"), located at 6808 Bergenline Avenue, Guttenberg, New

Jersey, was a mortgage brokerage company engaged in the business

of securing residential and commercial loans from lending and

financial institutions on behalf of its clients. Mortgage Pros

operated under a mortgage banking license issued from the New

Jersey Department of Banking and Insurance.

b. Abreu Real Estate, located at 6808 Bergenline

Avenue, Guttenberg, New Jersey, was a real estate company engaged in the business of buying and selling real estate in New Jersey.

c.  RLA Homes, Inc. (hereinafter "RLA Homes"), located at 6808 Bergenline Avenue, Guttenberg, New Jersey, was a company engaged in the business of managing the development, construction and sale of real estate in New Jersey.

d.  Defendant RENE ABREU was the president of Mortgage Pros, and owned and/or controlled the operations of Mortgage Pros, Abreu Real Estate and RLA Homes.  ABREU's responsibilities as owner and President of Mortgage Pros included establishing relationships with lending and financial institutions, obtaining personal and financial information from individual clients applying for loans, preparing loan applications for Mortgage Pros clients, reviewing loan applications prepared by other Mortgage Pros employees, and submitting or causing the submission of the loan applications to lending and financial institutions.

e.  Defendant LOURDES ADAN-ABREU was an owner of Abreu Real Estate and RLA Homes, whose responsibilities included supervising the sale of real estate involving Abreu Real Estate and RLA Homes, soliciting loan customers on behalf of Mortgage Pros, signing settlement documents on behalf of RLA Homes and Abreu Real Estate, and facilitating the processing of loan applications on behalf of Mortgage Pros.

f.  Defendant ANA MARTELL was employed by RLA Homes as the Chief Financial Officer and by Mortgage Pros as an

2

administrative assistant whose responsibilities included bookkeeping, accounting, and processing loan applications for clients of Mortgage Pros and RLA Homes.

g.   Defendant KATHY GIUNTA was employed by Mortgage Pros as a loan originator and processor whose responsibilities included obtaining personal and financial information from individuals applying for loans, preparing loan applications for Mortgage Pros clients, and submitting or causing the submission of these applications to lending and financial institutions.

h.   Defendant FERNANDO JIMENEZ was employed by Mortgage Pros as a loan originator and processor whose responsibilities included obtaining financial information from individuals applying for loans, preparing loan applications for Mortgage Pros clients, and submitting or causing the submission of these applications to lending and financial institutions.

i.   Defendant VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," was employed by Mortgage Pros as a real estate agent whose responsibilities included soliciting loan customers on behalf of Mortgage Pros, preparing loan applications for Mortgage Pros clients, and submitting or causing the submission of these applications to lending and financial institutions.

j.   Defendant EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," was employed by Abreu Real Estate as a real estate agent whose responsibilities included soliciting loan customers on behalf of Mortgage Pros, preparing loan applications for

3

Mortgage Pros clients, and submitting or causing the submission
of these applications to lending and financial institutions.

k.    Defendant RONALD ROSNER was an accountant
hired by defendant RENE ABREU whose responsibilities included the
preparation and submission of periodic financial statements to
the New Jersey Department of Banking and Insurance in furtherance
of the retention of defendant ABREU's mortgage banking license.

l.    Hudson United Bank (hereinafter "Hudson
United") of Mahwah, New Jersey; Flagstar Bank, FSB (formerly
First Security Savings Bank) (hereinafter "Flagstar") of
Bloomfield Hills, Michigan; Household Bank, FSB (hereinafter
"Household") of Wooddale, Illinois; and Bank United (formerly
Bank United of Texas, FSB) (hereinafter "Bank United") of
Houston, Texas, were financial institutions as defined in Title
18, United States Code, Section 20, whose deposits were insured
by the Federal Deposit Insurance Corporation (hereinafter
collectively referred to as "financial institutions").  The
financial institutions extended residential and commercial loans
to Mortgage Pros clients upon receipt of loan applications and
related documentation prepared and submitted by Mortgage Pros
employees or associates.

m.    Ivy Mortgage Corporation of Bellemead, New
Jersey; Accubanc Mortgage Corporation of Dallas, Texas; Crossland
Mortgage Corporation of Woburn, Massachusetts; Wall Street
Mortgage of Greenwich, Connecticut; Norwest Mortgage, Inc. of
Springfield, Illinois; Medallion Mortgage Company of San Jose,

4

California (formerly of Somerset, New Jersey); DMR Financial
Services of Woburn, Massachusetts; National Standard Mortgage
Corporation of Tarrytown, New York (formerly of Ocean, New
Jersey); and Jersey Mortgage Company of Cranford, New Jersey were
mortgage banking companies which operated as lending institutions
(hereinafter collectively referred to as "lending institutions"),
and which extended residential and commercial loans to Mortgage
Pros clients upon receipt of loan applications and related
documentation prepared and submitted by Mortgage Pros employees
or associates.

          2.  New Jersey Department of Banking and Insurance
regulations required that Mortgage Pros maintain a net worth of
$250,000 to retain its mortgage banking license.

                     The Conspiracy

          3.  From in or about November 1992 through in or about
July 1997, in Hudson County, in the District of New Jersey, and
elsewhere, defendants

                    RENE ABREU,
                LOURDES ADAN-ABREU,
                   ANA MARTELL,
                   KATHY GIUNTA,
       VALERIANO SANCHEZ, a/k/a "Valerio Sanchez,"
                 FERNANDO JIMENEZ,
       EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," and
                   RONALD ROSNER

knowingly and willfully combined, conspired and agreed with each
other and with others to devise a scheme and artifice to defraud
lending and financial institutions and to obtain money and
property from them by means of materially false and fraudulent
pretenses, representations and promises affecting financial

                          5

institutions, and to knowingly and willfully cause false loan applications to be sent or delivered by means of the United States Mail and by private and commercial interstate carrier to lending and financial institutions for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Section 1341.

The Object of the Conspiracy

4.   The object of the conspiracy was to submit materially false loan applications to financial and lending institutions to induce the institutions to issue residential loans to clients of Mortgage Pros.

The Manner and Means of the Conspiracy

5.   It was part of the conspiracy that defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, KATHY GIUNTA, VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," FERNANDO JIMENEZ, and others, recruited individuals who expressed an interest in purchasing residential properties (hereafter collectively referred to as "borrowers") to use Mortgage Pros to obtain mortgages for the purchase of the residential properties.

6.   It was a further part of the conspiracy that defendants RENE ABREU, KATHY GIUNTA, VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," FERNANDO JIMENEZ, and others, met with borrowers in order to obtain financial information purportedly for use in preparing mortgage applications for residential properties.  After these

6

meetings, defendants ABREU, GIUNTA, SANCHEZ, AGUIRRE, JIMENEZ, and others, disregarded financial information provided to them by the borrowers and prepared materially false loan applications which were submitted to lending and financial institutions to induce the institutions to make loans to the borrowers.   These applications contained, among other falsified documents, fictitious personal financial statements, income tax returns, Internal Revenue Service Forms W-2 (hereinafter "W-2 forms"), bank statements, pay stubs, and verifications of employment forms (hereinafter "VOE forms"), which were prepared by other individuals either employed by or associated with Mortgage Pros.

7.   It was a further part of the conspiracy that defendant RENE ABREU supervised and directed other Mortgage Pros employees and associates to falsify documents contained in loan applications and submit such falsified documents to lending and financial institutions.

8.   It was a further part of the conspiracy that defendants RENE ABREU, VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," and others prepared or caused the preparation of materially false HUD-1 settlement statements for real estate closings involving purchasers who had obtained mortgages through Mortgage Pros.   The HUD-1 settlement statements misrepresented the exchange of funds between purchaser and seller by reflecting, among other things, the existence of downpayments and/or closing costs which never were transacted.   Defendants ABREU, SANCHEZ and others submitted or caused the submission of these fictitious

7

HUD-1 statements to lending and financial institutions.

9. It was a further part of the conspiracy that defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, KATHY GIUNTA, VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," FERNANDO JIMENEZ, and others, caused the following residential loans, among others, to be obtained based on materially false information:

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Lending or Financial Institution |
|---|---|---|---|---|---|
| a. | November 1992 | residential loan secured by 8804 4th Avenue, North Bergen, New Jersey | 9/29/92 | $279,000 | sales contract; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |
| b. | July 1995 | residential loan secured by 108 67th Street, West New York, New Jersey | 7/24/95 | $151,050 | VOE form; W-2 form; and pay stub |
| c. | July 1995 | residential loan secured by 1451 72nd Street, North Bergen, New Jersey | 7/7/95 | $244,800 | sales contract; VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |
| d. | August 1995 | residential loan secured by 1211 88th Street, North Bergen, New Jersey | 7/18/95 | $171,000 | VOE form; W-2 form; pay stub; and bank statement |

8

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Lending or Financial Institution |
|---|---|---|---|---|---|
| e. | September 1995 | residential loan secured by 1015 West Side Avenue, Jersey City, New Jersey | 8/3/95 | $166,500 | sales contract; VOE form; W-2 form; pay stub; income tax return; bank statement; and HUD-1 settlement statement |
| f. | December 1995 | residential loan secured by 1009 76th Street, North Bergen, New Jersey | 11/21/95 | $157,500 | VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |
| g. | March 1996 | residential loan secured by 1115-1117 73rd Street, North Bergen, New Jersey | 2/1/96 | $179,000 | sales contract; income tax return; bank statement; and HUD-1 settlement statement |
| h. | June 1996 | residential loan secured by 610 82nd Street, North Bergen, New Jersey | 6/12/96 | $148,500 | bank statement; and income tax return |
| i. | December 1996 | residential loan secured by 624 21st Street, Union City, New Jersey | 10/30/96 | $107,000 | VOE form; W-2 form; and pay stub |

|   | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Lending or Financial Institution |
|---|---|---|---|---|---|
| j. | December 1996 | residential loan secured by 10 Carter Street, Toms River, New Jersey | 12/4/96 | $46,400 | VOE form; and pay stub |
| k. | March 1997 | residential loan secured by 1443 43rd Street, North Bergen, New Jersey | 2/5/97 | $242,900 | sales contract; VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |
| l. | May 1997 | residential loan secured by 1138-1140 50th Street, North Bergen, New Jersey | 5/15/97 | $286,000 | sales contract; VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |

Subsequently, the loans described in Paragraphs 9 a, b, c, e, and f defaulted, causing a loss of approximately $131,000 to the lending and financial institutions.

10. It was a further part of the conspiracy that after a mortgage was obtained from a lending or financial institution, defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, KATHY GIUNTA, VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," FERNANDO JIMENEZ, and others, destroyed financial documents, such as income tax returns and bank statements, provided by borrowers to Mortgage Pros which

10

contradicted the fictitious documents created by Mortgage Pros and submitted to lending and financial institutions.

11.   It was a further part of the conspiracy that Mortgage Pros charged borrowers a fee to prepare their loan applications.   Mortgage Pros also charged borrowers a loan origination fee for obtaining a mortgage on their behalf and received an additional fee from lending and/or financial institutions after the institution issued the loan.   In several transactions, Abreu Real Estate also received commissions resulting from the sale of residential properties in connection with loans obtained through Mortgage Pros.   Moneys received by Mortgage Pros and Abreu Real Estate in connection with the scheme and artifice to defraud totaled in excess of $300,000.

12.   It was a further part of the conspiracy that defendants VALERIANO SANCHEZ, a/k/a "Valerio Sanchez," EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," and FERNANDO JIMENEZ received a brokerage commission of approximately one percent of the value of the mortgage for each loan application originated or processed.

13.   It was a further part of the conspiracy that defendant RONALD ROSNER prepared false financial statements on behalf of defendant RENE ABREU, and caused such financial statements to be submitted to the New Jersey Department of Banking and Insurance in order for ABREU to retain his mortgage banking license.

11

## Overt Acts

14.    In furtherance of the conspiracy and in order to effect the object thereof, the following overt acts were committed in the District of New Jersey and elsewhere:

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Lending or Financial Institution |
|---|---|---|---|---|---|
| a. | November 1992 | residential loan secured by 8804 4th Avenue, North Bergen, New Jersey | 9/29/92 | $279,000 | sales contract; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |
| b. | December 1993 | residential loan secured by 67 68th Street, Guttenberg, New Jersey | 10/23/93 | $187,000 | VOE form; W-2 form; and pay stub |
| c. | March 1994 | residential loan secured by 1505 85th Street, North Bergen, New Jersey | 3/16/94 | $148,500 | VOE form; W-2 form; pay stub; and income tax return |
| d. | February 1995 | residential loan secured by 18 Pulaski Place, Hackensack, New Jersey | 2/23/95 | $138,000 | VOE form; W-2 form; pay stub; and income tax return |

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Lending or Financial Institution |
|---|---|---|---|---|---|
| e. | March 1995 | residential loan secured by 1804 43rd Street, North Bergen, New Jersey | 2/24/95 | $85,000 | VOE form; W-2 form; and pay stub |
| f. | May 1995 | residential loan secured by 226 Maple Street, Weehawken, New Jersey | 5/8/95 | $80,000 | VOE form; W-2 form; pay stub; and income tax return |
| g. | July 1995 | residential loan secured by 1451 72nd Street, North Bergen, New Jersey | 7/7/95 | $244,800 | sales contract; VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |
| h. | August 1995 | residential loan secured by 1211 88th Street, North Bergen, New Jersey | 7/18/95 | $171,000 | VOE form; W-2 form; pay stub; and bank statement |
| i. | December 1995 | residential loan secured by 1009 76th Street, North Bergen, New Jersey | 11/21/95 | $157,500 | VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Lending or Financial Institution |
|---|---|---|---|---|---|
| j. | March 1996 | residential loan secured by 1115-1117 73rd Street, North Bergen, New Jersey | 2/1/96 | $179,000 | sales contract; income tax return; bank statement; and HUD-1 settlement statements |
| k. | August 1996 | residential loan secured by 108 Old Tappan Road, Old Tappan, New Jersey | 7/31/96 | $500,000 | W-2 form; and income tax return |
| l. | May 1997 | residential loan secured by 1138-1140 50th Street, North Bergen, New Jersey | 5/15/97 | $286,000 | sales contract; VOE form; W-2 form; pay stub; bank statement; and HUD-1 settlement statement |

In violation of Title 18, United States Code, Section

371.

14

## COUNT TWO

### (Mail Fraud Conspiracy - Commercial Loans)

1.  Paragraphs 1 through 2 and 4 through 13 of Count

One are realleged and incorporated as if fully set forth herein.

2.  Defendant LUIS NIEVES was employed by Hudson

United, in New Jersey, as a senior loan officer whose
responsibilities included processing commercial loan applications,
managing commercial accounts for Hudson United customers,
presenting commercial loan applications to loan review committees
at Hudson United, approving commercial loan applications on behalf
of Hudson United, and resolving accounts which had been overdrawn.
Defendant NIEVES managed several commercial bank accounts which
had been opened by defendant RENE ABREU.

### The Conspiracy

3.  From in or about October 1994 to in or about

February 2001, in Hudson County, in the District of New Jersey,
and elsewhere, defendants

> RENE ABREU,
> ANA MARTELL,
> KATHY GIUNTA, and
> LUIS NIEVES

knowingly and willfully combined, conspired and agreed with each
other and with others to devise a scheme and artifice to defraud
financial institutions and to obtain money and property from them
by means of materially false and fraudulent pretenses,
representations and promises affecting financial institutions, and
to knowingly and willfully cause false loan applications to be

15

sent or delivered by means of the United States Mail and by private and commercial interstate carrier to financial institutions for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Section 1341.

## The Object of the Conspiracy

4. The object of the conspiracy was to submit materially false loan applications to financial institutions to induce the institutions to issue commercial loans to clients of Mortgage Pros.

## The Manner and Means of the Conspiracy

5. It was part of the conspiracy that defendant RENE ABREU recruited individuals who expressed an interest in obtaining commercial loans (hereafter "commercial borrowers") to use Mortgage Pros to obtain commercial loans for use in business ventures.

6. It was a further part of the conspiracy that defendants RENE ABREU, ANA MARTELL, KATHY GIUNTA, and others, met with commercial borrowers in order to obtain financial information purportedly for use in preparing mortgage applications for commercial loans. After these meetings, defendants ABREU, MARTELL, GIUNTA, and others, disregarded financial information provided to them by the commercial borrowers and prepared materially false loan applications which were submitted to Hudson United to induce Hudson United to make loans to the commercial borrowers. These applications contained, among other falsified documents, fictitious personal financial statements and income tax

16

returns which were prepared by other individuals either employed by or associated with Mortgage Pros.

7. It was a further part of the conspiracy that defendants RENE ABREU and LOURDES ADAN-ABREU submitted, or caused to be submitted to Hudson United, additional commercial loan applications in furtherance of their own business ventures, which applications contained materially false financial information. Defendant LUIS NIEVES processed these commercial loan applications for Hudson United, and misrepresented to the Hudson United loan review committee the financial status of defendants ABREU, ADAN-ABREU and their companies, including Mortgage Pros and Abreu Real Estate, in order to secure commercial loans for defendants ABREU and ADAN-ABREU.

8. It was a further part of the conspiracy that defendants RENE ABREU, ANA MARTELL, KATHY GIUNTA, LUIS NIEVES, and others, caused the following commercial loans, among others, to be obtained based on materially false information:

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Financial Institution |
|---|---|---|---|---|---|
| a. | November 1994 | commercial loan secured by 1308 Summit Avenue, Union City, New Jersey | 6/6/94 | $111,000 | financial statement; and income tax return |

17

|     | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Financial Institution |
|-----|--------------|--------------------|--------------|----------------|--------------------------------------------------------|
| b.  | February 1996 | commercial loan secured by 519-521 54th Street, West New York, New Jersey | 1/2/96 | $130,000 | financial statement; and income tax return |
| c.  | April 1996 | commercial loan secured by 7701-7703 Bergenline Avenue, North Bergen, New Jersey | 2/29/96 | $250,000 | financial statement; and income tax return |
| d.  | October 1996 | commercial loan secured by 509-515 74th Street, North Bergen, New Jersey | 8/15/96 | $285,000 | financial statement; and income tax return |
| e.  | June 1997 | commercial loan secured by 4915 Bergenline Avenue, West New York, New Jersey | 6/4/97 | $253,000 | financial statement; and income tax return |
| f.  | October 1998 | commercial loan secured by 1200-1208 70th Street and 7009-7011 Smith Avenue, North Bergen, New Jersey | 11/6/98 | $150,000 | financial statement; and income tax return |

| | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Financial Institution |
|---|---|---|---|---|---|
| g. | September 2000 | commercial loan secured by 6331-6333 Durham Avenue, North Bergen, New Jersey | 8/13/99 | $135,000 | financial statement; and income tax return |
| h. | February 2001 | commercial loan secured by 1500 74th Street, North Bergen, New Jersey | 3/1/01 | $100,000 | financial statement; and income tax return |

9. It was a further part of the conspiracy that Mortgage Pros charged commercial borrowers a fee to prepare their commercial loan applications. Mortgage Pros also received a loan origination fee from the commercial borrowers for obtaining a mortgage on their behalf. Commissions received by Mortgage Pros in connection with the commercial mortgages based on materially false information totaled in excess of $32,000.

10. It was a further part of the conspiracy that defendant LUIS NIEVES received cash payments from defendant RENE ABREU for loan applications processed through Hudson United, which cash payments corresponded to approximately one percent of the commercial loans issued by Hudson United.

19

## Overt Acts

11.   In furtherance of the conspiracy and in order to effect the object thereof, the following overt acts were committed in the District of New Jersey and elsewhere:

|    | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Financial Institution |
|----|------------|-------------------|------------|--------------|----------------------------------------------|
| a. | November 1994 | commercial loan secured by 1308 Summit Avenue, Union City, New Jersey | 6/6/94 | \$111,000 | financial statement; and income tax return |
| b. | April 1996 | commercial loan secured by 7701-7703 Bergenline Avenue, North Bergen, New Jersey | 2/29/96 | \$250,000 | financial statement; and income tax return |
| c. | October 1996 | commercial loan secured by 509-515 74th Street, North Bergen, New Jersey | 8/15/96 | \$285,000 | financial statement; and income tax return |
| d. | October 1998 | commercial loan secured by 1200-1208 70th Street and 7009-7011 Smith Avenue, North Bergen, New Jersey | 11/6/98 | \$150,000 | financial statement; and income tax return |
| e. | June 2000 | commercial loan secured by 1121 Juanita Place, Fort Lee, New Jersey | 6/13/00 | \$100,000 | financial statement |

20

|    | Date of Loan | Description of Loan | Mailing Date | Amount of Loan | Falsified Documents Submitted to Financial Institution |
|----|--------------|---------------------|--------------|----------------|--------------------------------------------------------|
| f. | September 2000 | commercial loan secured by 6331-6333 Durham Avenue, North Bergen, New Jersey | 8/13/99 | $135,000 | financial statement; and income tax return |
| g. | February 2001 | commercial loan secured by 1500 74th Street, North Bergen, New Jersey | 3/1/01 | $100,000 | financial statement; and income tax return |

In violation of Title 18, United States Code, Section

371.

## **COUNTS THREE TROUGH TWELVE**

### **(Mail Fraud Affecting Financial Institutions)**

1. Paragraphs 1 through 2 and 4 through 13 of Count One and Paragraphs 2 and 4 through 10 of Count Two are realleged and incorporated as if fully set forth herein.

2. Defendants JOSE CERVINO and RENE ABREU were partners in several real estate ventures in Hudson County, New Jersey, including the construction of Lucky Estates in North Bergen, New Jersey and 2900 Bergenline Avenue in Union City, New Jersey. Defendants CERVINO and ABREU secured commercial loans from Hudson United and other financial institutions in furtherance of these and other business ventures.

3. From at least in or about November 1992 through in or about February 2001, in Hudson County, in the District of New Jersey, and elsewhere, the defendants set forth in Paragraph 5 below did knowingly and willfully devise and intend to devise a scheme and artifice to defraud financial institutions and to obtain money and property from them by means of materially false and fraudulent pretenses, representations, and promises affecting financial institutions.

4. The object of the scheme and artifice to defraud was to submit materially false loan applications to financial institutions to induce the financial institutions to issue commercial and residential loans to clients of Mortgage Pros.

5. On or about the dates set forth below, for the purpose of executing the scheme and artifice to defraud, the

22

defendants set forth below did knowingly and willfully cause the false loan applications set forth below to be sent or delivered to financial institutions by means of the United States Mail and by private and commercial interstate carrier:

| Count | Defendants | Mailing Date | Description of Loan | Victim Lender |
|-------|-----------|-------------|--------------------|--------------|
| Three | Abreu Adan-Abreu | 9/29/92 | residential loan secured by 8804 4th Avenue, North Bergen, New Jersey | Bank United |
| Four | Abreu Jimenez Giunta | 3/16/94 | residential loan secured by 1505 85th Street, North Bergen, New Jersey | Household |
| Five | Abreu Adan-Abreu Martell Giunta | 7/7/95 | residential loan secured by 1451 72nd Street, North Bergen, New Jersey | Flagstar |
| Six | Abreu Aguirre Martell Giunta | 7/18/95 | residential loan secured by 1211 88th Street, North Bergen, New Jersey | Flagstar |
| Seven | Abreu Sanchez Giunta | 11/21/95 | residential loan secured by 1009 76th Street, North Bergen, New Jersey | Flagstar |
| Eight | Abreu Sanchez Giunta | 2/1/96 | residential loan secured by 1115-1117 73rd Street, North Bergen, New Jersey | Flagstar |
| Nine | Abreu Giunta | 7/31/96 | residential loan secured by 108 Old Tappan Old, Old Tappan, New Jersey | Hudson United |
| Ten | Abreu Cervino | 11/25/96 | commercial loan secured by 6112-6020 76th Street, now known as Lucky Lane, North Bergen, New Jersey | Hudson United |

| Count | Defendants | Mailing Date | Description of Loan | Victim Lender |
|---|---|---|---|---|
| Eleven | Abreu Cervino | 11/6/98 | commercial loan secured by 7009-7011 Smith Avenue, North Bergen, New Jersey | Hudson United |
| Twelve | Abreu Aguirre Giunta | 8/13/99 | commercial loan secured by 6331-6333 Durham Avenue, North Bergen, New Jersey | Hudson United |

In violation of Title 18, United States Code, Sections 1341 and 2.

24

## COUNT THIRTEEN

### (Money Laundering Conspiracy - Proceeds of Mail Fraud Scheme)

1.   Paragraphs 1 through 2 and 4 through 13 of Count
One are realleged and incorporated as if fully set forth in full
herein.

2.   As used in this Indictment, "financial transaction"
has the meaning given it in Title 18, United States Code, Section
1956(c)(4).

### The Conspiracy

3.   From in or about November 1992 through in or about
July 1997, in Hudson County, in the District of New Jersey, and
elsewhere, defendants

RENE ABREU,
LOURDES ADAN-ABREU, and
ANA MARTELL

knowingly and willfully combined, conspired and agreed with each
other and with others to conduct financial transactions involving
the proceeds of a specified unlawful activity, namely mail fraud
as alleged in Counts One, and Three through Twelve, knowing that
the property involved in the financial transactions represented
the proceeds of some form of unlawful activity, with the intent to
promote the carrying on of the mail fraud scheme described in
Counts One, and Three through Twelve, contrary to Title 18, United
States Code, Section 1956(a)(1)(A)(i).

### The Object of the Conspiracy

4.   The object of the conspiracy was to engage in
financial transactions with the proceeds of the mail fraud scheme

25

in order to promote the continued operation of the scheme.

<u>The Manner and Means of the Conspiracy</u>

5.   It was part of the conspiracy that after a mortgage was obtained from a lending or financial institution based upon materially false information as described in Count One, settlement checks were issued to Mortgage Pros and Abreu Real Estate at the closing of the residential properties.   These checks represented payment to Mortgage Pros for loan origination fees received from borrowers, and additional fees received from lending and financial institutions.   Checks issued to Abreu Real Estate represented payment for commissions resulting from the sale of residential properties in connection with loans obtained through Mortgage Pros.   Checks received by Mortgage Pros and Abreu Real Estate were thereafter deposited into their respective commercial bank accounts which were maintained by defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, and others at Hudson United Bank.   From in or about November 1992 through in or about July 1997, payments received by Mortgage Pros and Abreu Real Estate in this manner and deposited into their respective bank accounts totaled in excess of $300,000.

6.   It was a further part of the conspiracy that after the checks described in Paragraph 5 of this Count were deposited into the Mortgage Pros and Abreu Real Estate bank accounts, defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, and others issued checks drawn on these accounts to pay expenses, enabling the continued operation of Mortgage Pros and Abreu Real Estate.

These expenses included commission and salary checks issued to individuals involved in the mail fraud scheme alleged in Counts One, and Three through Twelve.  Checks also were issued to the New Jersey Department of Banking and Insurance enabling Mortgage Pros to retain its mortgage brokerage license.  Checks also were issued for accounting fees, equipment rental, utilities, advertising, and public relations.  These transactions, totaling in excess of $300,000, enabled the continued operation of the mail fraud scheme described in Counts One and Three through Twelve.

In violation of Title 18, United States Code, Section 1956(h).

27

## COUNT FOURTEEN

### (Check Kiting Conspiracy)

1.    Paragraphs 1 through 2 and 4 through 13 of Count One; Paragraphs 2 and 4 through 10 of Count Two; and Paragraphs 2 and 4 through 6 of Count Thirteen are realleged and incorporated as if fully set forth herein.

2.    Hudson United was a federally insured financial institution with various branch offices operating throughout the State of New Jersey.  Hudson United, among other things, provided banking services to defendants RENE ABREU and LOURDES ADAN-ABREU. Hudson United also provided banking services to several companies owned and/or controlled by defendants ABREU and ADAN-ABREU, including Mortgage Pros, RLA Homes, and others.

3.    Hudson United maintained an overdraft policy for accounts bearing insufficient funds whereby a computer-generated report would be issued to senior loan officers and senior management if a particular bank account was overdrawn in an amount in excess of $5,000 for five consecutive days.  Senior loan officers at Hudson United also were alerted on a daily basis to individual checks drawn on accounts bearing insufficient funds. Checks drawn on accounts bearing insufficient funds required the approval of a senior loan officer in order for the check to be honored by Hudson United.

4.    Defendant RENE ABREU opened, and caused to be opened, several commercial bank accounts at Hudson United, including Hudson United account number (hereinafter "Hudson United

28

Acct. No.") 0208585633 (hereinafter "Mortgage Pros Acct."); Hudson
United Acct. No. 0208581996 (hereinafter "RLA Homes Acct"); Hudson
United Acct. No. 3980727853 (hereinafter "RLA Homes IV Acct.");
Hudson United Acct. No. 2140000737 (hereinafter "RLA Homes/Special
III Acct."); Hudson United Acct. No. 3980435446 (hereinafter "Rene
Abreu Acct."); Hudson United Acct. No. 2140003323 (hereinafter
"Jersey Homes Tre Inc. Acct."); Hudson United Acct. No. 2140003310
(hereinafter "Jersey Homes Tre Special Inc. Acct."); Hudson United
Acct. No. 2140003381 (hereinafter "406 Jefferson Homes LLC
Acct."); and Hudson United Acct. No. 2140003475 (hereinafter "7504
4th St. Ave. LLC Acct.") (hereinafter collectively referred to as
the "Abreu commercial bank accounts"). Defendant ABREU was
authorized to draw checks on the Abreu commercial bank accounts.

5.    Defendants RENE ABREU and LOURDES ADAN-ABREU
opened, and caused to be opened, several other commercial bank
accounts at Hudson United, including Hudson United Acct. No.
0208581938 (hereinafter "Abreu Real Estate Acct." and hereinafter
included in the "Abreu commercial bank accounts"). Defendants
ABREU and ADAN-ABREU were authorized to draw checks on the Abreu
Real Estate account.

6.    Defendant ANA MARTELL, in her capacity as
bookkeeper and accountant for Mortgage Pros and Chief Financial
Officer for RLA Homes, was authorized to write checks drawn on the
Abreu commercial bank accounts.

## The Conspiracy

7.    From in or about April 1996 through in or about June 2001, in Hudson County, in the District of New Jersey, and elsewhere, defendants

RENE ABREU,
LOURDES ADAN-ABREU,
ANA MARTELL, and
LUIS NIEVES

knowingly and willfully combined, conspired and agreed with each other and with others to execute and attempt to execute a scheme and artifice to defraud Hudson United, and by means of false and fraudulent pretenses, representations, and promises, to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of Hudson United, contrary to Title 18, United States Code, Section 1344.

## The Object of the Conspiracy

8.    The object of the conspiracy was for defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, LUIS NIEVES, and others to continuously draw, or cause to be drawn, checks on Abreu's commercial bank accounts with insufficient funds and credit, or cause to be credited, other accounts with these seemingly bona fide checks.  Defendants ABREU, ADAN-ABREU, and MARTELL fraudulently issued, or caused to be issued, such checks in order to pay the business and personal expenses of defendant ABREU and others without having to obtain loans through official means.

30

## The Manner and Means of the Conspiracy

9.   It was part of the conspiracy that defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, LUIS NIEVES, and others, systematically presented, or caused to be presented to Hudson United a check drawn from one of the Abreu commercial bank accounts (hereinafter the "first account") for deposit into another of the Abreu commercial bank accounts which bore insufficient funds (hereinafter the "second account").   The transfer of funds from the first account to the second account provided an instant credit to the second account, covered an existing overdraft in the second account, and shifted the overdraft from the second account to the first account. Defendants ABREU, ADAN-ABREU, NIEVES, MARTELL, and others thereafter presented, or cause to be presented to Hudson United, a check drawn from the second account for deposit into the first account to cover the existing overdraft in the first account.

10.   It was a further part of the conspiracy that, in order to avoid detection by Hudson United of the continuous overdrafts in the Abreu commercial bank accounts, LUIS NIEVES approved, or directed other Hudson United employees to approve, each check drawn on Abreu commercial bank accounts which bore insufficient funds.

11.   It was a further part of the conspiracy that defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, LUIS NIEVES, and others amassed or caused to be amassed daily overdrafts in Abreu's commercial bank accounts which exceeded

31

$1,000,000 on at least twenty-one different dates, and exceeded
$500,000 on at least 283 different dates, during the time period
from on or about June 1, 2000 through on or about June 15, 2001.

## Overt Acts

12. In furtherance of the conspiracy and in order to effect the object thereof, on or about the dates set forth below, the following overt acts were committed in the District of New Jersey and elsewhere:

|  | Date | Check Number | Account Check Drawn From | Account Check Deposited Into | Check Amount |
|---|---|---|---|---|---|
| a. | 11/10/97 | 2627 | RLA Homes Acct. | Mortgage Pros Acct. | $223,595 |
| b. | 11/13/97 | 7844 | Mortgage Pros Acct. | RLA Homes Acct. | $223,595 |
| c. | 2/4/98 | 9791 | Abreu Real Estate Acct. | RLA Homes/Special III Acct. | $430,000 |
| d. | 2/6/98 | 1188 | RLA Homes/ Special III Acct. | Abreu Real Estate Acct. | $430,000 |
| e. | 12/7/99 | 9066 | Mortgage Pros Acct. | RLA Homes Acct. | $562,500 |
| f. | 12/9/99 | 3235 | RLA Homes Acct. | Mortgage Pros Acct. | $562,500 |
| g. | 6/2/00 | 9297 | Mortgage Pros Acct. | RLA Homes Acct. | $545,000 |
| h. | 6/5/00 | 3355 | RLA Homes Acct. | Mortgage Pros Acct. | $545,000 |
| i. | 5/24/01 | 1075 | 7504 4th St. Ave. LLC Acct. | RLA Homes Acct. | $729,000 |

33

|  | Date | Check Number | Account Check Drawn From | Account Check Deposited Into | Check Amount |
|---|---|---|---|---|---|
| j. | 5/29/01 | 3751 | RLA Homes Acct. | 7504 4th St. Ave. LLC Acct. | $729,000 |

In violation of Title 18, United States Code, Section

371.

34

## COUNT FIFTEEN

### (Money Laundering Conspiracy - Proceeds of Bank Fraud Scheme)

1.    Paragraphs 1 through 2 and 4 through 13 of Count
One; Paragraphs 2 and 4 through 10 of Count Two; and Paragraphs 2
through 6 and 8 through 11 of Count Fourteen are realleged and
incorporated as if fully set forth herein.

### The Conspiracy

2.    From in or about April 1996 through in or about
June 2001, in Hudson County, in the District of New Jersey, and
elsewhere, defendants

> RENE ABREU,
> LOURDES ADAN-ABREU,
> ANA MARTELL, and
> LUIS NIEVES

knowingly and willfully combined, conspired and agreed with each
other and with others to conduct financial transactions involving
the proceeds of a specified unlawful activity, namely bank fraud
as alleged in Count Fourteen, knowing that the property involved
in the financial transactions represented the proceeds of some
form of unlawful activity, with the intent to promote the carrying
on of the bank fraud scheme described in Count Fourteen, contrary
to Title 18, United States Code, Section 1956(a)(1)(A)(i).

### The Object of the Conspiracy

3.    The object of the conspiracy was to engage in
financial transactions with the proceeds of the bank fraud scheme
described in Count Fourteen to promote the continued operation of
the scheme.

35

## The Manner and Means of the Conspiracy

4.   It was part of the conspiracy that defendants RENE ABREU, LOURDES ADAN-ABREU, and ANA MARTELL issued checks drawn on the Abreu commercial bank accounts with insufficient funds in order to credit other accounts with these seemingly bona fide checks, thus enabling them to obtain an artificially created line of credit in the account into which these checks were deposited, and enabling them to pay the business and personal expenses of defendant ABREU and others without having to obtain loans through official means.

5.   It was a further part of the conspiracy that defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, LUIS NIEVES, and others, in order to avoid detection by Hudson United of the continuous overdrafts in the Abreu commercial bank accounts created by the check kiting scheme alleged in Count Fourteen, systematically issued, or caused to be issued, checks drawn on the accounts with an artificially created line of credit and deposited these checks into overdrawn accounts enabling this scheme to continue.

6.   It was a further part of the conspiracy that defendant LUIS NIEVES, in order to avoid detection by Hudson United of the continuous overdrafts in the Abreu commercial bank accounts created by the check kiting scheme alleged in Count Fourteen, systematically approved, or directed other Hudson United

36

employees to approve, each check drawn on Abreu commercial bank accounts which bore insufficient funds.

In violation of Title 18, United States Code, Section 1956(h).

37

## **COUNT SIXTEEN**

### **(Receipt of Payment for Procuring Loans)**

1.  Paragraphs 1 through 2 and 4 through 13 of Count One; Paragraphs 2 and 4 through 10 of Count Two; Paragraphs 2 through 6 and 8 through 11 of Count Fourteen; and Paragraphs 3 through 6 of Count Fifteen are realleged and incorporated as if fully set forth herein.

2.  In or about November 1997, in Hudson County, in the District of New Jersey, and elsewhere, defendant

### LUIS NIEVES,

as an officer and employee of Hudson United, a financial institution, did knowingly, willfully and corruptly solicit, demand, and accept a thing of value from another individual, intending to be influenced and rewarded in connection with business and transactions of Hudson United, in that defendant NIEVES solicited, demanded, and accepted approximately $3,000 from another individual in return and as a reward for his assistance in helping the individual obtain a commercial loan.

In violation of Title 18, United States Code, Sections 215(a)(2) and 2.

38

## COUNT SEVENTEEN

## (Conspiracy to Extort Money for Protection of Illegal Gambling)

1. Paragraphs 1 through 2 and 4 through 13 of Count One; Paragraphs 2 and 4 through 10 of Count Two; Paragraphs 4 through 6 of Count Thirteen; Paragraphs 2 through 6 and 8 through 11 of Count Fourteen; and Paragraphs 3 through 6 of Count Fifteen are realleged and incorporated as if fully set forth herein.

2. At all times relevant to this Indictment:

a. The West New York Police Department (hereinafter "WNYPD") was the principal local law enforcement agency for the Town of West New York, New Jersey. The WNYPD had the power and responsibility to enforce the criminal laws of the State of New Jersey and the municipal ordinances of the Town of West New York, including the enforcement of the New Jersey laws regarding illegal gambling.

b. Alexander V. Oriente, the Chief of the WNYPD from in or about 1994 through in or about September 1997, had ultimate authority over the management and supervision of the entire police department and the law enforcement efforts that it undertook.

c. Gambling for money on electronic video machines known as "joker poker" machines and other similar video gambling machines, if not licensed and regulated in accordance with State law, was illegal under the laws of New Jersey, pursuant to N.J. Stat. Ann. § 2C:37-2.

d. Boardwalk Amusements, located in West New

39

York, New Jersey, was a business which included, among other things, the ownership and distribution of video gambling machines to restaurants, taverns, bodegas and other establishments located in West New York, New Jersey and elsewhere for illegal gambling activities.   The machines used by Boardwalk Amusements for this purpose were comprised of component parts, including circuit boards, dollar bill acceptors and video monitors, some of which were manufactured and assembled outside of New Jersey.

### The Conspiracy

3.   From in or about June 1995 through in or about March 1998, in West New York, in the District of New Jersey, and elsewhere, defendants

RENE ABREU and
MANUEL MIER, a/k/a "Manny Mier"

knowingly and willfully combined, conspired and agreed with each other and with others to obstruct, delay and affect interstate commerce by extortion, under color of official right, by demanding and accepting bribe and protection money from the proceeds of the video gambling business of Boardwalk Amusements, which money was paid with the consent of the owners and operators of that business.

### The Object of the Conspiracy

4.   The object of the conspiracy was to collect cash payments from the owners and operators of Boardwalk Amusements for the protection and promotion of illegal gambling activity in West New York, New Jersey by the WNYPD.

40

## The Manner and Means of the Conspiracy

5.   It was part of the conspiracy that the owners of Boardwalk Amusements placed video poker and similar gambling machines which were not licensed and regulated by New Jersey laws at various locations in West New York.  These machines were used by customers who were paid money for credits accrued during the course of their play.  The owners of Boardwalk Amusements reimbursed the owners of the locations where the machines were placed for the payouts that they made to winning patrons.  The remaining money, the "Profit," was then divided between the location owners and the owners of Boardwalk Amusements.

6.   It was a further part of the conspiracy that the owners of Boardwalk Amusements conducted these illegal gambling operations with the knowledge and protection of the WNYPD.  In exchange for the protection and promotion of this activity by the WNYPD, the owners of Boardwalk Amusements and others made bribe and protection payments directly to WNYPD officers, including Alexander V. Oriente, and indirectly to them through an individual who served as their intermediary or "bagman."

7.   It was a further part of the conspiracy that defendants RENE ABREU and MANUEL MIER, a/k/a "Manny Mier" represented to Alexander V. Oriente that they were acting on behalf of a high-level West New York public official.

8.   It was a further part of the conspiracy that defendants RENE ABREU and MANUEL MIER, a/k/a "Manny Mier" demanded that Alexander V. Oriente deliver to them the Boardwalk Amusements

41

extortion proceeds.

9.   It was a further part of the conspiracy that from
in or about June 1995 through in or about July 1997, defendants
RENE ABREU and MANUEL MIER, a/k/a "Manny Mier" received these cash
payments from Alexander V. Oriente and others.

10.   It was a further part of the conspiracy that
defendants RENE ABREU and MANUEL MIER, a/k/a "Manny Mier" urged
others to conceal their participation in receiving these cash
payments from law enforcement.

In violation of Title 18, United States Code,
Section 1951(a).

42

## COUNT EIGHTEEN

### (Conspiracy to Structure Currency Transactions)

1.   Paragraphs 1 through 2 and 4 through 13 of Count One; Paragraphs 2 and 4 through 10 of Count Two; Paragraphs 4 through 6 of Count Thirteen; Paragraphs 2 through 6 and 8 through 11 of Count Fourteen; Paragraphs 3 through 6 of Count Fifteen; and Paragraphs 2 and 4 through 10 of Count Seventeen are realleged and incorporated as if fully set forth herein.

2.   At all times relevant to this Count of the Indictment, Hudson United, First Union, The Bank of New York, The Provident, and GSL Savings Bank were domestic financial institutions within the meaning of Title 31, United States Code, Sections 5312 and 5313(a) and Title 31, Code of Federal Regulations, Section 103.11, and were engaged in activities that affected interstate commerce.

### The Conspiracy

3.   From in or about May 1995 through in or about November 2000, in the District of New Jersey and elsewhere, defendants

> RENE ABREU,
> LOURDES ADAN-ABREU,
> ANA MARTELL,
> KATHY GIUNTA,
> EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," and
> MANUEL MIER, a/k/a "Manny Mier"

knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations issued thereunder, combined, conspired and agreed with each other and with others to structure and assist in

43

structuring transactions with domestic financial institutions by
causing in excess of $2,000,000 in United States currency to be
deposited into accounts at financial institutions by the
defendants in amounts of less than $10,000, contrary to Title 31,
United States Code, Sections 5324(a)(3) and (d)(1).

The Object of the Conspiracy

4.   It was the object of the conspiracy that defendants
RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, KATHY GIUNTA, EDGARDO
AGUIRRE, a/k/a "Eddie Aguirre," MANUEL MIER, a/k/a "Manny Mier,"
and others would and did structure various cash transactions to
avoid having domestic financial institutions file reports of those
transactions with the Internal Revenue Service (the "IRS"), as
required by law.

The Manner and Means of the Conspiracy

5.   It was part of the conspiracy that defendant RENE
ABREU maintained numerous bank accounts at Hudson United.  Over
the course of a five-year period, 1995 through 2000, defendants
RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, KATHY GIUNTA, EDGARDO
AGUIRRE, a/k/a "Eddie Aguirre," MANUEL MIER, a/k/a "Manny Mier,"
and others made, or caused to be made, cash deposits in excess of
$2,000,000 into accounts under defendant ABREU's control.  Each of
these deposits was in an amount under $10,000 and almost all of
the deposits were made at the West New York Branch of Hudson
United.  In this manner defendant ABREU was able to avoid the
filing of currency transaction reports regarding the
aforementioned cash deposits.

44

6.   It was a further part of the conspiracy that defendant LOURDES ADAN-ABREU made cash payments to at least one bank employee for the employee's assistance in structuring a portion of the above-described cash deposits.

7.   It was a further part of the conspiracy that defendants ANA MARTELL, KATHY GIUNTA, EDGARDO AGUIRRE, a/k/a "Eddie Aguirre," MANUEL MIER, a/k/a "Manny Mier," and others made significant cash deposits in amounts under $10,000 into bank accounts under their control without the filing of a currency transaction report.  Almost immediately following such deposits, defendants MARTELL, GIUNTA, AGUIRRE and MIER obtained either an official check, certified check or bank check for the benefit of defendant ABREU or one of the companies under his control.  These checks were then either deposited into bank accounts maintained by defendants ABREU, ADAN-ABREU and MARTELL, typically as part of a larger deposit, or negotiated for the benefit of defendant ABREU. In this manner defendant ABREU was able to cause the deposit of checks into accounts under his control in the amount equal to the cash deposited into the accounts of defendants MARTELL, GIUNTA, AGUIRRE, MIER, and others.  These transactions further enabled the defendants to avoid the filing of currency transaction reports.

8.   It was a further part of the conspiracy that defendants RENE ABREU and MANUEL MIER, a/k/a "Manny Mier," urged others to conceal their participation in this scheme, including their receipt of cash payments more particularly described in Count Seventeen.

45

## Overt Acts

9.   In furtherance of the conspiracy and in order to effect the object thereof, the following acts were committed in the District of New Jersey and elsewhere:

a.   On or about each of the dates set forth below, members of the conspiracy structured and caused to be structured the deposits in cash set forth below totaling approximately $665,420 into the following bank accounts: Hudson United Acct. No. 0208585633 (previously defined in Count Fourteen as "Mortgage Pros Acct."); Hudson United Acct. No. 2140001626 (hereinafter "530 Monroe Affordable Acct."); Hudson United Acct. No. 308087484 (hereinafter "Abreu, Rene/Lourdes Acct.(1)"); Hudson United Acct. No. 0308082861 (hereinafter "Abreu, Rene/Lourdes Acct.(2)"); Hudson United Acct. No. 0208581938 (previously defined in Count Fourteen as the "Abreu Real Estate Acct."); Hudson United Acct. No. 0208582432 (hereinafter "Abreu Real Estate Trust Acct."); Hudson United Acct. No. 0208581996 (previously defined in Count Fourteen as "RLA Homes Acct."); Hudson United Acct. No. 2140000737 (previously defined in Count Fourteen as "RLA Homes/Special III Acct."); Hudson United Acct. No. 1400007575 (hereinafter "Abreu, Lourdes Acct."); Hudson United Acct. No. 3980413691 (hereinafter "Lourdes/Adan Acct.(2)"); Hudson United Acct. No. 2140003365 (hereinafter "85 Madison House LLC Acct."); Hudson United Acct. No. 3980156071 (hereinafter "85 Madison House LLC Acct.(2)"), Hudson United Acct. No. 3980156246 (hereinafter "85 Madison House LLC Acct.(3)"); Hudson United Acct. No. 2140003475 (previously

46

defined in Count Fourteen as "7504 4th St Ave LLC Acct."); Hudson
United Acct. No. 2140000902 (hereinafter "Jersey Homes II LLC
Acct."); Hudson United Acct. No. 2140003323 (previously defined in
Count Fourteen as "Jersey Homes Tre Inc. Acct."); Hudson United
Acct. No. 2140003381 (previously defined in Count Fourteen as "406
Jefferson Homes LLC Acct."); Hudson United Acct. No. 2140002722
(hereinafter "235 72nd St Acct."); Hudson United Acct. No.
2720000524 (hereinafter "100-102 Jefferson LLC Acct."); Hudson
United Acct. No. 2140002489 (hereinafter "Lucky Estates Inc
Acct."); Hudson United Acct. No. 2140003310 (previously defined in
Count Fourteen as "Jersey Homes Tre Special Inc. Acct."); Hudson
United Acct. No. 0308115000 (hereinafter "Abreu/Cervino Acct.");
Hudson United Acct. No. 2140003200 (hereinafter "Gateway I LLC
Acct."); Hudson United Acct. No. 4740895429 (hereinafter "Lourdes/
Adan Acct.(1)"); and GSL Savings Acct. No. 0017002304 (hereinafter
"Abreu Real Estate Trust Acct."), as described below:

| | DATE: | ACCOUNT: | AMOUNT: |
|---|---|---|---|
| 1. | 05/02/97 | RLA Homes Acct. | $9,500.00 |
| 2. | 05/05/97 | Abreu, Rene/Lourdes Acct.(1) | $3,005.00 |
| 3. | 05/05/97 | RLA Homes Acct. | $9,000.00 |
| 4. | 05/07/97 | Abreu, Rene/Lourdes Acct.(2) | $2,300.00 |
| 5. | 05/07/97 | Mortgage Pros Acct. | $1,450.00 |
| 6. | 05/19/97 | Abreu Real Estate Acct. | $8,000.00 |
| 7. | 05/19/97 | Abreu, Rene/Lourdes Acct.(1) | $4,000.00 |
| 8. | 05/19/97 | Abreu, Rene/Lourdes Acct.(2) | $4,000.00 |
| 9. | 05/21/97 | Abreu Real Estate Acct. | $5,000.00 |

| 10. | 05/23/97 | Abreu, Rene/Lourdes Acct.(1) | $540.00 |
| 11. | 05/27/97 | 100-102 Jefferson LLC Acct. | $7,000.00 |
| 12. | 05/27/97 | Mortgage Pros Acct. | $9,000.00 |
| 13. | 05/27/97 | RLA Homes Acct. | $1,350.00 |
| 14. | 05/28/97 | Abreu, Rene/Lourdes Acct.(2) | $5,525.00 |
| 15. | 05/29/97 | Abreu Real Estate Acct. | $5,000.00 |
| 16. | 05/29/97 | Abreu, Lourdes Acct. | $8,000.00 |
| 17. | 05/29/97 | Abreu, Rene/Lourdes Acct.(1) | $5,000.00 |
| 18. | 05/29/97 | Mortgage Pros  Acct. | $1,000.00 |
| 19. | 06/03/97 | Abreu Real Estate Trust Acct. | $1,000.00 |
| 20. | 06/03/97 | Abreu, Rene/Lourdes Acct.(1) | $1,595.00 |
| 21. | 06/03/97 | Mortgage Pros Acct. | $9,900.00 |
| 22. | 06/03/97 | RLA Homes Acct. | $9,900.00 |
| 23. | 06/05/97 | Mortgage Pros Acct. | $1,180.00 |
| 24. | 06/06/97 | Abreu Real Estate Acct. | $3,000.00 |
| 25. | 06/06/97 | Abreu, Rene/Lourdes Acct.(1) | $1,213.00 |
| 26. | 06/06/97 | Mortgage Pros Acct. | $9,000.00 |
| 27. | 06/06/97 | RLA Homes Acct. | $9,000.00 |
| 28. | 06/16/97 | Abreu Real Estate Acct. | $5,000.00 |
| 29. | 06/16/97 | Mortgage Pros Acct. | $9,500.00 |
| 30. | 06/16/97 | RLA Homes Acct. | $9,500.00 |
| 31. | 06/17/97 | Mortgage Pros Acct. | $8,600.00 |
| 32. | 06/17/97 | RLA Homes Acct. | $8,000.00 |
| 33. | 07/01/97 | Abreu Real Estate Acct. | $8,000.00 |
| 34. | 07/03/97 | Abreu Real Estate Acct. | $8,000.00 |
| 35. | 07/03/97 | Abreu, Rene/Lourdes Acct.(1) | $715.00 |

| | | | |
|---|---|---|---|
| 36. | 07/07/97 | Abreu, Rene/Lourdes Acct.(1) | $2,279.00 |
| 37. | 07/08/97 | Abreu, Rene/Lourdes Acct.(1) | $950.00 |
| 38. | 07/14/97 | Mortgage Pros Acct. | $6,400.00 |
| 39. | 07/21/97 | Abreu, Rene/Lourdes Acct.(1) | $1,830.00 |
| 40. | 07/24/97 | Abreu Real Estate Trust Acct. | $3,600.00 |
| 41. | 07/25/97 | Abreu Real Estate Trust Acct. | $1,300.00 |
| 42. | 08/04/97 | Abreu, Rene/Lourdes Acct.(1) | $3,570.00 |
| 43. | 10/29/97 | Lucky Estates Inc Acct. | $2,700.00 |
| 44. | 10/31/97 | Abreu Real Estate Trust Acct. | $2,200.00 |
| 45. | 11/04/97 | Abreu, Rene/Lourdes Acct.(1) | $1,275.00 |
| 46. | 11/04/97 | Abreu, Rene/Lourdes Acct.(1) | $2,961.00 |
| 47. | 11/06/97 | RLA Homes Acct. | $5,000.00 |
| 48. | 01/26/98 | Abreu Real Estate Trust Acct. | $9,000.00 |
| 49. | 01/26/98 | Abreu, Rene/Lourdes Acct.(1) | $540.00 |
| 50. | 01/28/98 | Abreu Real Estate Trust Acct. | $600.00 |
| 51. | 01/28/98 | Abreu, Rene/Lourdes Acct.(1) | $835.00 |
| 52. | 01/28/98 | Abreu, Rene/Lourdes Acct.(2) | $6,000.00 |
| 53. | 01/30/98 | 235 72nd St Acct. | $300.00 |
| 54. | 01/30/98 | Abreu, Rene/Lourdes Acct.(1) | $540.00 |
| 55. | 02/04/98 | Lucky Estates Inc Acct. | $1,200.00 |
| 56. | 03/20/98 | Abreu Real Estate Trust Acct. | $1,970.00 |
| 57. | 03/24/98 | Abreu Real Estate Trust Acct. | $400.00 |
| 58. | 03/25/98 | RLA Homes Acct. | $9,800.00 |
| 59. | 03/27/98 | Mortgage Pros Acct. | $9,500.00 |
| 60. | 03/27/98 | RLA Homes Acct. | $500.00 |
| 61. | 03/31/98 | Mortgage Pros Acct. | $4,050.00 |

| 62. | 04/01/98 | Abreu, Rene/Lourdes Acct.(1) | $540.00 |
| 63. | 04/01/98 | Mortgage Pros Acct. | $9,500.00 |
| 64. | 04/02/98 | Mortgage Pros Acct. | $9,900.00 |
| 65. | 04/02/98 | RLA Homes Acct. | $9,900.00 |
| 66. | 04/03/98 | Abreu, Rene/Lourdes Acct.(1) | $1,025.00 |
| 67. | 04/03/98 | Mortgage Pros Acct. | $5,200.00 |
| 68. | 04/06/98 | Abreu, Rene/Lourdes Acct.(1) | $1,780.00 |
| 69. | 04/13/98 | RLA Homes Acct. | $9,900.00 |
| 70. | 04/14/98 | Abreu Real Estate Trust Acct. | $1,300.00 |
| 71. | 04/14/98 | Mortgage Pros Acct. | $100.00 |
| 72. | 04/14/98 | RLA Homes Special III Acct. | $9,900.00 |
| 73. | 04/15/98 | RLA Homes Special III Acct. | $7,500.00 |
| 74. | 08/04/98 | 235 72nd St Acct. | $1,700.00 |
| 75. | 08/04/98 | Abreu, Rene/Lourdes Acct.(1) | $920.00 |
| 76. | 08/04/98 | Abreu, Rene/Lourdes Acct.(1) | $1,037.00 |
| 77. | 08/04/98 | Abreu, Rene/Lourdes Acct.(1) | $1,725.00 |
| 78. | 08/05/98 | 235 72nd St Acct. | $850.00 |
| 79. | 08/06/98 | Mortgage Pros Acct. | $900.00 |
| 80. | 08/06/98 | RLA Homes Acct. | $9,012.00 |
| 81. | 08/07/98 | RLA Homes Acct. | $6,695.00 |
| 82. | 09/18/98 | RLA Homes Acct. | $9,500.00 |
| 83. | 09/21/98 | RLA Homes Acct. | $6,085.00 |
| 84. | 09/25/98 | Abreu Real Estate Trust Acct. | $1,500.00 |
| 85. | 10/01/98 | RLA Homes Acct. | $9,500.00 |
| 86. | 10/02/98 | RLA Homes Acct. | $3,000.00 |
| 87. | 10/05/98 | 235 72nd St Acct. | $850.00 |

| 88. | 10/05/98 | Abreu, Rene/Lourdes Acct.(1) | $625.00 |
|-----|----------|------------------------------|---------|
| 89. | 10/05/98 | Abreu, Rene/Lourdes Acct.(1) | $2,630.00 |
| 90. | 10/16/98 | Lucky Estates Inc Acct. | $9,000.00 |
| 91. | 10/19/98 | 235 72nd St Acct. | $1,595.55 |
| 92. | 10/19/98 | Abreu Real Estate Trust Acct. | $500.00 |
| 93. | 12/17/98 | Abreu, Rene/Lourdes Acct.(1) | $1,320.00 |
| 94. | 12/17/98 | Abreu, Rene/Lourdes Acct.(2) | $580.00 |
| 95. | 12/21/98 | Abreu, Rene/Lourdes Acct.(2) | $100.00 |
| 96. | 12/21/98 | Mortgage Pros Acct. | $9,000.00 |
| 97. | 02/01/99 | Gateway 1 LLC Acct. | $9,500.00 |
| 98. | 02/02/99 | Abreu, Rene/Lourdes Acct.(1) | $1,682.64 |
| 99. | 02/02/99 | Abreu, Rene/Lourdes Acct.(1) | $219.00 |
| 100. | 02/02/99 | Gateway 1 LLC Acct. | $8,290.00 |
| 101. | 02/04/99 | 235 72nd St Acct. | $1,450.00 |
| 102. | 02/04/99 | Abreu, Rene/Lourdes Acct.(1) | $1,200.00 |
| 103. | 02/05/99 | 235 72nd St Acct. | $1,500.00 |
| 104. | 02/22/99 | Abreu Real Estate Acct. | $3,000.00 |
| 105. | 02/22/99 | Abreu, Rene/Lourdes Acct.(1) | $260.00 |
| 106. | 02/22/99 | Abreu, Rene/Lourdes Acct.(2) | $1,200.00 |
| 107. | 03/11/99 | Mortgage Pros Acct. | $6,030.00 |
| 108. | 03/16/99 | Abreu Real Estate Trust Acct. | $5,000.00 |
| 109. | 03/19/99 | Abreu, Rene/Lourdes Acct.(2) | $2,600.00 |
| 110. | 07/26/99 | Abreu, Rene/Lourdes Acct.(2) | $1,018.00 |
| 111. | 07/30/99 | 406 Jefferson Homes LLC Acct. | $2,900.00 |
| 112. | 07/30/99 | 85 Madison House LLC Acct. | $8,900.00 |
| 113. | 07/30/99 | Gateway 1 LLC Acct. | $8,200.00 |

| 114. 08/04/99 | 7504 4th St Ave LLC Acct. | $1,300.00 |
| 115. 08/04/99 | Abreu, Rene/Lourdes Acct.(1) | $1,696.00 |
| 116. 08/05/99 | 235 72nd St Acct. | $850.00 |
| 117. 08/05/99 | Abreu Real Estate Trust Acct. | $1,010.00 |
| 118. 08/05/99 | Abreu Real Estate Trust Acct. | $1,300.00 |
| 119. 08/05/99 | Abreu, Rene/Lourdes Acct.(1) | $515.00 |
| 120. 08/06/99 | 235 72nd St Acct. | $600.00 |
| 121. 08/06/99 | Abreu, Rene/Lourdes Acct.(1) | $1,217.00 |
| 122. 08/06/99 | Abreu, Rene/Lourdes Acct.(2) | $280.00 |
| 123. 02/07/00 | 235 72nd St Acct. | $2,200.00 |
| 124. 02/07/00 | Lourdes/Adan Acct.(2) | $1,682.00 |
| 125. 02/11/00 | Abreu Real Estate Acct. | $9,030.00 |
| 126. 03/24/00 | Abreu Real Estate Trust Acct. | $125.00 |
| 127. 03/24/00 | Lourdes/Adan Acct.(1) | $2,500.00 |
| 128. 03/24/00 | Lourdes/Adan Acct.(2) | $2,000.00 |
| 129. 03/27/00 | 406 Jefferson Homes LLC Acct. | $9,900.00 |
| 130. 03/30/00 | Lourdes/Adan Acct.(2) | $1,125.00 |
| 131. 04/03/00 | 7504 4th St Ave LLC Acct. | $1,300.00 |
| 132. 04/04/00 | Gateway 1 LLC Acct. | $9,900.50 |
| 133. 04/04/00 | Lourdes/Adan Acct.(2) | $1,984.00 |
| 134. 04/05/00 | 406 Jefferson Homes LLC Acct. | $9,000.00 |
| 135. 04/05/00 | Gateway 1 LLC Acct. | $8,353.00 |
| 136. 04/05/00 | Lourdes/Adan Acct.(2) | $1,507.00 |
| 137. 04/06/00 | 235 72nd St Acct. | $1,550.00 |
| 138. 04/06/00 | 406 Jefferson Homes LLC Acct. | $9,000.00 |
| 139. 04/06/00 | Lourdes/Adan Acct.(2) | $1,139.00 |

| | | | |
|---|---|---|---|
| 140. | 04/07/00 | 406 Jefferson Homes LLC Acct. | $4,000.00 |
| 141. | 04/07/00 | Jersey Homes TRE Special Inc Acct. | $7,800.00 |
| 142. | 04/11/00 | 235 72nd St Acct. | $700.00 |
| 143. | 04/11/00 | Lourdes/Adan Acct.(2) | $376.00 |
| 144. | 04/18/00 | 235 72nd St Acct. | $9,900.00 |
| 145. | 04/18/00 | Abreu Real Estate Trust Acct. | $1,500.00 |
| 146. | 04/18/00 | Abreu/Cervino Acct. | $9,900.00 |
| 147. | 04/18/00 | Jersey Homes TRE Special Inc Acct. | $9,900.00 |
| 148. | 04/19/00 | 85 Madison House LLC Acct.(3) | $9,900.00 |
| 149. | 04/20/00 | Abreu Real Estate Acct. | $5,000.00 |
| 150. | 04/25/00 | 235 72nd St Acct. | $1,100.00 |
| 151. | 05/01/00 | Abreu Real Estate Trust Acct. | $1,513.75 |
| 152. | 05/01/00 | Lourdes/Adan Acct.(2) | $650.00 |
| 153. | 05/03/00 | 235 72nd St Acct. | $900.00 |
| 154. | 05/03/00 | Lourdes/Adan Acct.(2) | $220.00 |
| 155. | 05/05/00 | 235 72nd St Acct. | $900.00 |
| 156. | 05/05/00 | Abreu Real Estate Trust Acct. | $5,140.70 |
| 157. | 05/05/00 | Lourdes/Adan Acct.(1) | $900.00 |
| 158. | 05/08/00 | 235 72nd St Acct. | $2,050.00 |
| 159. | 05/08/00 | Lourdes/Adan Acct.(2) | $2,600.00 |
| 160. | 05/30/00 | 235 72nd St Acct. | $2,000.00 |
| 161. | 05/30/00 | Abreu Real Estate Acct. | $185.00 |
| 162. | 06/05/00 | Abreu Real Estate Acct. | $515.00 |
| 163. | 06/05/00 | Lourdes/Adan Acct.(2) | $1,490.00 |
| 164. | 06/06/00 | 235 72nd St Acct. | $1,475.00 |
| 165. | 06/06/00 | Jersey Homes Tre Special Inc. Acct. | $6,500.00 |

| | | |
|---|---|---|
| 166. 06/06/00 | Lourdes/Adan Acct.(2) | $1,733.00 |
| 167. 06/14/00 | Lourdes/Adan Acct.(1) | $4,980.00 |
| 168. 10/31/00 | Gateway 1 LLC Acct. | $5,336.00 |
| 169. 11/02/00 | Gateway 1 LLC Acct. | $6,000.00 |

b. On or about each the dates set forth below, members of the conspiracy obtained either an official check, certified check or bank check for the benefit of defendant RENE ABREU or one of the companies under his control which was subsequently deposited into one of the following bank accounts: Mortgage Pros Acct.; First Fidelity bank client trust accounts maintained by the law firm bearing the initials R.D.S.H.P. (hereinafter "RDS Trust Acct."); Hudson United Acct. No. 2140002007 (hereinafter "V.P. Acct."); Hudson United Acct. No. 2140003381 (hereinafter "406 Jefferson Homes LLC Acct."), as described below:

| | DATE: | ACCOUNT: | AMOUNT: |
|---|---|---|---|
| 1. | 05/22/97 | Mortgage Pros Acct. | $9,000.00 |
| 2. | 05/23/97 | Mortgage Pros Acct. | $10,000.00 |
| 3. | 05/23/97 | Mortgage Pros Acct. | $20,000.00 |
| 4. | 05/27/97 | Mortgage Pros Acct. | $9,000.00 |
| 5. | 06/06/97 | Mortgage Pros Acct. | $9,000.00 |
| 6. | 06/06/97 | Mortgage Pros Acct. | $1,000.00 |
| 7. | 06/16/97 | Mortgage Pros Acct. | $9,000.00 |
| 8. | 06/16/97 | Mortgage Pros Acct. | $10,000.00 |
| 9. | 06/16/97 | Mortgage Pros Acct. | $20,000.00 |
| 10. | 04/01/98 | RDS Trust Acct. | $5,500.00 |
| 11. | 04/01/98 | RDS Trust Acct. | $5,000.00 |

54

| 12. | 04/01/98 | RDS Trust Acct. | $10,000.00 |
| 13. | 02/25/99 | V.P. Acct. | $9,000.00 |
| 14. | 03/24/00 | 406 Jefferson Homes LLC Acct. | $9,500.00 |
| 15. | 03/27/00 | 406 Jefferson Homes LLC Acct. | $10,000.00 |
| 16. | 04/18/00 | 406 Jefferson Homes LLC Acct. | $9,900.00 |
| 17. | 04/19/00 | 406 Jefferson Homes LLC Acct. | $25,000.00 |

In violation of Title 18, United States Code, Section

371.

## COUNTS NINETEEN THROUGH FORTY-TWO

### (Structuring Currency Transactions)

1. Paragraphs 1 through 2 and 4 through 13 of Count One; Paragraphs 2 and 4 through 10 of Count Two; Paragraphs 4 through 6 of Count Thirteen; Paragraphs 2 through 6 and 8 through 11 of Count Fourteen; Paragraphs 3 through 6 of Count Fifteen; Paragraphs 2 and 4 through 10 of Count Seventeen; and Paragraphs 2 and 4 through 8 of Count Eighteen are realleged and incorporated as if fully set forth herein.

2. On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendants

RENE ABREU,
LOURDES ADAN-ABREU,
ANA MARTELL,
KATHY GIUNTA, and
EDGARDO AGUIRRE, a/k/a "Eddie Aguirre"

did knowingly, willfully, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations issued thereunder, structure, attempt to structure, and assist in structuring transactions with domestic financial institutions by causing United States currency in the amounts set forth below to be deposited into accounts at financial institutions in amounts of less than $10,000 as more particularly

56

described in Paragraph 9 of Count Eighteen of this Indictment, as
described below:

| Count | Defendants | Date | Reference to Paragraph 9 of Count Eighteen | Approximate Amount |
|-------|-----------|------|--------------------------------------------|--------------------|
| Nineteen | Abreu<br>Adan-Abreu | 5/2/97 through 5/7/97 | 9(a)(1-5) | $25,255 |
| Twenty | Abreu<br>Adan-Abreu<br>Martell<br>Giunta<br>Aguirre | 5/19/97 through 5/23/97 | 9(a)(6-10) and 9(b)(1-3) | $60,540 |
| Twenty-One | Abreu<br>Adan-Abreu<br>Martell | 5/27/97 through 5/29/97 | 9(a)(11-18) and 9(b)(4) | $50,875 |
| Twenty-Two | Abreu<br>Adan-Abreu<br>Martell<br>Giunta | 6/3/97 through 6/6/97 | 9(a)(19-27) and 9(b)(5-6) | $55,788 |
| Twenty-Three | Abreu<br>Adan-Abreu<br>Martell<br>Giunta<br>Aguirre | 6/16/97 through 6/17/97 | 9(a)(28-32) and 9(b)(7-9) | $79,600 |
| Twenty-Four | Abreu<br>Adan-Abreu | 7/1/97 through 7/8/97 | 9(a)(33-37) | $19,944 |
| Twenty-Five | Abreu<br>Adan-Abreu | 7/14/97 through 8/4/97 | 9(a)(38-42) | $16,700 |
| Twenty-Six | Abreu<br>Adan-Abreu | 10/29/97 through 11/6/97 | 9(a)(43-47) | $14,136 |
| Twenty-Seven | Abreu<br>Adan-Abreu | 1/26/98 through 2/4/98 | 9(a)(48-55) | $19,015 |

| Count | Defendants | Date | Reference to Paragraph 9 of Count Eighteen | Approximate Amount |
|-------|-----------|------|-------------------------------------------|--------------------|
| Twenty-Eight | Abreu Adan-Abreu Martell Giunta | 3/20/98 through 4/6/98 | 9(a)(56-68) and 9(b)(10-12) | $84,565 |
| Twenty-Nine | Abreu Adan-Abreu | 4/13/98 through 4/15/98 | 9(a)(69-73) | $28,700 |
| Thirty | Abreu Adan-Abreu | 8/4/98 through 8/7/98 | 9(a)(74-81) | $22,839 |
| Thirty-One | Abreu Adan-Abreu | 9/18/98 through 9/25/98 | 9(a)(82-84) | $17,085 |
| Thirty-Two | Abreu Adan-Abreu | 10/1/98 through 10/5/98 | 9(a)(85-89) | $16,605 |
| Thirty-Three | Abreu Adan-Abreu | 10/16/98 through 10/19/98 | 9(a)(90-92) | $11,095 |
| Thirty-Four | Abreu Adan-Abreu | 12/17/98 through 12/21/98 | 9(a)(93-96) | $11,000 |
| Thirty-Five | Abreu Adan-Abreu | 2/1/99 through 2/5/99 | 9(a)(97-103) | $23,841 |
| Thirty-Six | Abreu Adan-Abreu Martell | 2/22/99 through 2/25/99 | 9(a)(104-106) and 9(b)(13) | $13,460 |
| Thirty-Seven | Abreu Adan-Abreu | 3/11/99 through 3/19/99 | 9(a)(107-109) | $13,630 |
| Thirty-Eight | Abreu Adan-Abreu | 7/26/99 through 8/6/99 | 9(a)(110-122) | $29,786 |
| Thirty-Nine | Abreu Adan-Abreu | 2/7/00 through 2/11/00 | 9(a)(123-125) | $12,912 |

| Count | Defendants | Date | Reference to Paragraph 9 of Count Eighteen | Approximate Amount |
|---|---|---|---|---|
| Forty | Abreu Adan-Abreu Martell Aguirre | 3/24/00 through 5/8/00 | 9(a)(126-159) and 9(b)(14-17) | $188,733 |
| Forty-One | Abreu Adan-Abreu | 5/30/00 through 6/14/00 | 9(a)(160-167) | $18,878 |
| Forty-Two | Abreu Adan-Abreu | 10/31/00 through 11/2/00 | 9(a)(168-169) | $11,336 |

In violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1), and Title 18, United States Code, Section 2.

## COUNT FORTY-THREE

### (Payment of Monies to Bank Official)

1.   Paragraphs 1, 2 and 4 through 13 of Count One and Paragraphs 4 through 6 of Count Thirteen and Paragraphs 2 through 6 and 8 through 11 of Count Fourteen and Paragraphs 3 through 6 of Count Fifteen; Paragraphs 2 and 4 through 10 of Count Seventeen; and Paragraphs 2 and 4 through 8 of Count Eighteen are realleged and incorporated as if fully set forth herein.

2.   From in or about August 1995 through in or about August 1997, in Hudson County, in the District of New Jersey, and elsewhere, defendant

### LOURDES ADAN-ABREU

did knowingly, willfully and corruptly give, offer, and promise a thing of value to another individual, with the intent to influence and reward an officer and employee of Hudson United, a financial institution, in connection with the business and transactions of Hudson United, in that defendant ADAN-ABREU gave, offered and promised to a bank teller at Hudson United more than $5,000 in cash payments in connection with the business and transactions of Hudson United.

In violation of Title 18, United States Code, Sections 215(a)(1) and 2.

## **FIRST FORFEITURE ALLEGATION**

1.  The Grand Jury realleges and incorporates by reference the allegations contained in this Indictment for the purpose of noticing forfeiture pursuant to Title 31, United States Code, Section 5317.

a.  As a result of committing the structuring of monetary transactions offenses, in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1) alleged in Counts Nineteen through Forty-two of this Indictment, defendants

RENE ABREU,
LOURDES ADAN-ABREU,
ANA MARTELL,
KATHY GIUNTA, and
EDGARDO AGUIRRE, a/k/a "Eddie Aguirre"

shall forfeit to the United States, pursuant to Title 31, United States Code, Section 5317(c)(1), all property, real and personal, involved in the structuring offenses and all property traceable to such property, including, but not limited to, the following:

### Money Judgment

b.  A sum of money equal to $846,320 in United States currency, representing the total amount of money involved in the offense of structuring monetary transactions, in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1), for which defendants RENE ABREU, LOURDES ADAN-ABREU, ANA MARTELL, KATHY GIUNTA, and EDGARDO AGUIRRE, a/k/a "Eddie Aguirre" are jointly and severally liable.

## Real Property

c. All right title and interest the defendants have in certain lots or parcels of land, together with their buildings, appurtenances, improvements, fixtures, attachments and easements, located at:

> (1) 1121-23 Juanita Place
> Fort Lee, New Jersey 07024;

> (2) 6808 Bergenline Avenue
> Guttenberg, New Jersey 07093;

and

> (3) 406 Jefferson Street
> Hoboken, New Jersey 07030.

d. If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

> i. cannot be located upon the exercise of due diligence;
>
> ii. has been transferred or sold to, or deposited with, a third person;
>
> iii. has been placed beyond the jurisdiction of the Court;
>
> iv. has been substantially diminished in value; or
>
> v. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 31 U.S.C. Section 5317(c)(1), to seek forfeiture of any other property of said defendant(s) up to the value of the above forfeitable property, all in violation of Title 31, United States Code, Sections 5317(c)(1), 5324(a)(3) and 5324(d)(1).

62

## SECOND FORFEITURE ALLEGATION

1. The Grand Jury realleges and incorporates by reference the allegations contained in this Indictment for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982.

a. As a result of committing the money laundering offenses in violation of Title 18, United States Code, Section 1956(h) alleged in Count Thirteen of this Indictment, defendants

RENE ABREU,
LOURDES ADAN-ABREU, and
ANA MARTELL

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money laundering offenses and all property traceable to such property, including, but not limited to, the following:

### Money Judgment

b. A sum of money equal to $300,000 in United States currency, representing the total amount of money involved in the offense of money laundering, in violation of Title 18, United States Code, Section 1956(h), for which defendants RENE ABREU, LOURDES ADAN-ABREU, and ANA MARTELL are jointly and severally liable.

### Real Property

c. All right title and interest the defendants have in a certain lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements,

63

located at 6808 Bergenline Avenue, Guttenberg, New Jersey 07093.

d.   If any of the above-described forfeitable property, as a
result of any act or omission of the defendant(s):

> i.   cannot be located upon the exercise of due
> diligence;
>
> ii.   has been transferred or sold to, or deposited
> with, a third person;
>
> iii.   has been placed beyond the jurisdiction of
> the Court;
>
> iv.   has been substantially diminished in value; or
>
> v.   has been commingled with other property which
> cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 18 U.S.C.
Section 982(b), to seek forfeiture of any other property of said
defendant(s) up to the value of the above forfeitable property,
all in violation of Title 18, United States Code, Sections 982(b)
and 1956(h).

A TRUE BILL,

FOREPERSON

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY

64

CASE NUMBER: _____

# United States District Court
## District of New Jersey

## UNITED STATES OF AMERICA

v.

## RENE ABREU et al.

# INDICTMENT FOR

18 U.S.C. §§ 215, 371, 1341, 1344, 1951, 1956 and 2
31 U.S.C. §§ 5324(a)(3) and 5324(d)(1)

A True Bill,

_____
Foreperson

## CHRISTOPHER J. CHRISTIE
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

DEBORAH L. GOLDKLANG
*ASSISTANT U.S. ATTORNEY*
*(973) 645-2729*

USA-48AD 8
(Ed. 1/97)